O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WILLIAM CHRISTOPHER BURGESS,
an individual; JAMES ROBERT
BURGESS, an individual;

               Plaintiffs,

     v.

PROTECTIVE LIFE INSURANCE CO., a
corporation; and DOES 1 to 10, inclusive,

               Defendants.

Case No. 2:13-cv-5372-ODW(Ex)

**ORDER DENYING MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT [17]**

## I.  INTRODUCTION

Billy Joe Burgess died in January 1987.  More than 26 years later, his sons sued Protective Life Insurance Company for the proceeds of the whole-life business insurance policy taken out on their father's behalf.  Protective now moves to dismiss the Burgesses' Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).  (ECF No. 17.)    For the following reasons, Protective's motion is **DENIED**.[1]

/ / /

/ / /.

---

[1] Having carefully considered the papers filed in support of and in opposition of this Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

## II.   FACTUAL BACKGROUND

In 1986, North American Development and Management Company purchased a $1,000,000 "whole life business insurance policy" on the life of Billy Burgess, the President of North American and Plaintiffs' father. (SAC ¶¶ 12, 19.)  The policy was issued by United Founders, which was later acquired by Protective on October 1, 1989. (*Id.* ¶ 12.)   According to Protective, North American was the owner and beneficiary of the issued policy. (*Id.*)  However, the insurance policy in question is missing.

Billy died on January 8, 1987, but the policy proceeds were not paid to North American before it became defunct and lost its corporate status on August 25, 1989. (*Id.* ¶¶ 13–14.)  No beneficiary, successor in interest, or successor beneficiary has ever made a claim to the Policy. (*Id.* ¶ 15.)

On March 12, 2013, the Burgesses received letters from Protective stating that it was searching for Billy's heirs to process a life-insurance claim. (*Id.* ¶ 17.)  The Burgesses informed Protective that they were Billy's sons and heirs and faxed over Billy's death certificate in early April 2013. (*Id.* ¶ 19.)  Protective then sent the Burgesses checks representing a policy face amount of $7,000. (*Id.* ¶ 20.)  While the check stubs listed the Burgesses as "beneficiaries," no policy, explanation letter, or other paperwork was attached to the checks. (*Id.*)

The Burgesses then filed an inquiry with the Missouri Department of Insurance (MDOI), a third party who investigates consumer complaints against insurance companies, about the delayed payment of the policy proceeds. (*Id.* ¶ 22.)  On May 1, 2013, Protective responded to the MDOI inquiry.  Protecitve explained that it had conducted an audit of open files that had little to no activity earlier in the year.  In doing so, Protective discovered that Billy had passed away and that "the owner/beneficiary of the policy, North American . . . was found to be an inactive company . . . .  Therefore, a search of the insured was located." (*Id.* ¶ 23.)  The death claim was reviewed by Protective's Claim Committee and approved for payment to

2

the Burgesses.  (*Id.*)  Protective further represented that they did not receive any policy-specific pages when they acquired United Founders.  (*Id.*)

Unsatisfied with Protective's response, the Burgesses asked MDOI for further explanation.  (*Id.* ¶ 24.)  On May 15, 2013, Protective responded to the second MDOI inquiry and clarified that the $1,000,000 policy "became a non-participating life insurance policy in the amount of $7,000 on March 31, 1987 as a result of non-payment of premiums."  (*Id.* ¶ 25.)

On June 24, 2013, the Burgesses filed suit in the Los Angeles County Superior Court against Protective.  The action was removed to federal court on July 25, 2013. (ECF. No. 1.)  On September 25, 2013, Protective moved to dismiss the Burgesses' Complaint for lack of subject-matter jurisdiction and failure to state a claim.  (ECF No. 17.)

### III.   LEGAL STANDARD

Dismissal under Rule 12(b)(1) is appropriate when a court lacks subject-matter jurisdiction over the claim.  Fed. R. Civ. P. 12(b)(1).  On a Rule 12(b)(1) motion to dismiss, the plaintiff bears the burden of establishing that subject matter jurisdiction is proper.  *U.S.  v. Orr Water Ditch Co.*, 600 F.3d 1152, 1157 (9th Cir. 2010).  A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence.  *Warren v. Fox Family Wordwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).  Where jurisdiction is intertwined with the merits, a court "assume[s] the truth of the allegations in a complaint . . . unless controverted by undisputed facts in the record."  *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).

Dismissal under Rule 12(b)(6) can be based on "the lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement—to survive a motion to dismiss for failure to state a claim under

Rule 12(b)(6). *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003); Fed. R. Civ. P. 8(a)(2). For a complaint to sufficiently state a claim, its "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While specific facts are not necessary so long as the complaint gives the defendant fair notice of the claim and the grounds upon which the claim rests, a complaint must nevertheless "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Iqbal*'s plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," but does not go so far as to impose a "probability requirement." *Id.* Rule 8 demands more than a complaint that is merely consistent with a defendant's liability—labels and conclusions, or formulaic recitals of the elements of a cause of action do not suffice. *Id.* Instead, the complaint must allege sufficient underlying facts to provide fair notice and enable the defendant to defend itself effectively. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

When considering a Rule 12(b)(6) motion, a court is generally limited to the pleadings and must construe "[a]ll factual allegations set forth in the complaint . . . as true and . . . in the light most favorable to [the plaintiff]." *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). Conclusory allegations, unwarranted deductions of fact, and unreasonable inferences need not be blindly accepted as true by the court. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Yet, a complaint should be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts" supporting plaintiff's claim for relief. *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

/ / /

4

## IV.    DISCUSSION

In their Second Amended Complaint, the Burgesses state four causes of action: breach of the implied covenant of good faith and fair dealing, breach of insurance contract, breach of lost or destroyed insurance contract, and violation of California Business and Professions Code section 17200.   Protective moves to dismiss the Burgesses' complaint on the grounds that (1) this Court lacks subject-matter jurisdiction because the Burgesses lack standing to maintain this action, (2) all of the Burgesses' claims are barred by the applicable statutes of limitation, and (3) the Burgesses fail to satisfy the elements of any of their state-law claims.  (ECF No. 17.) The Court considers each in turn.

### A.    Choice of law

At the outset, Protective claims that Missouri law governs this action because "actions related to insurance policies are governed by the substantive law of the state in which the insurance policy was made, executed[,] and delivered."  (Mot. 7.)  But this is not the proper choice-of-law rule.  Rather, the Court must apply the choice-of-law rules of the forum state.  *Abogados v. AT&T*, 223 F.3d 932, 934 (9th Cir. 2000).

In determining which state law to apply, California utilizes a three-part governmental-interest test.  *Id.*  First, the court examines the substantive law of each jurisdiction to determine whether the laws differ.  *Id.*  Second, if the laws do differ, the court examines each state's interest in applying its law to determine whether a "true conflict" exists.  *Id.*  Third, if more than one jurisdiction has a legitimate interest, the court then identifies which jurisdiction's interest would be more impaired if its law were not applied.  *Id.*  The party seeking to apply a foreign state's law "bears the burden of identifying the conflict between that state's law and California's law on the issue, and establishing that the foreign state has an interest in having its law applied." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 995 (9th Cir. 2010) (citing *Wash. Mut. Bank v. Super. Ct.*, 24 Cal. 4th 906, 921 (2001)).

/ / /

5

Here, the only substantive variance between Missouri law and California law is California's Unfair Competition Law, Business and Professions Code Section 17200. Missouri does not have a parallel statute.   California affords its residents greater protection than does Missouri.   California has a strong governmental interest in ensuring that California beneficiaries are not wrongfully denied their valid claims by insurers engaging in unfair business practices.   *See Lettieri v. Equitable Life Assurance Soc'y of the U.S.*, 627 F.2d 930 (9th Cir. 1980) (applying California law because it afforded greater protection to its resident beneficiaries than New York law). And Protective does not argue that Missouri's governmental interests would be adversely affected by enforcing Section 17200.   Indeed, it is unlikely that Missouri's governmental interest would be impaired by deterring unfair, unlawful, or fraudulent business practices.

Protective does not identify any other conflict between Missouri law and California law.   In fact, Protective argues that under the law of both jurisdictions the applicable law is the same—the rights of a beneficiary vest immediately upon the death of the insured.   (Reply 3.)   Further, Protective fails to even address Missouri's interest in having its laws applied in this case.

Thus, Protecitve fails to meet its burden of proving that Missouri's interest would be impaired if California law is applied to this action.   And although California law differs slightly in that Business and Professions Code Section 17200 affords greater protection than is available to Missouri citizens, no "true conflict" exists because Missouri does not have an interest in permitting unfair business practices to proliferate.   *See Abogados*, 223 F.3d at 934.   Accordingly, the Court applies California law.

**B.   Standing**

Protective first moves to dismiss this action on the grounds that the Burgesses lack prudential standing to maintain this action for policy proceeds.   Specifically, Protective argues that the rights to the proceeds vested in North American—which

Protective contends was the owner and beneficiary of the policy—at the time of Billy's death.  Therefore, Protective argues, the right to receive policy proceeds never flowed to the Burgesses.  (Mot. 8–10.)  Protective asserts that the payment of the proceeds to the Burgesses was simply an error.  (*Id.*)

The Burgesses contend that Protective "originally represented that [the Burgesses] were entitled to the benefits as the heirs of their mother, the wife of the Billy Burgess."  (Opp'n 13.)  They assert that the fact that Protective paid them the policy proceeds and listed them as "beneficiaries" on the check stub proves they were the beneficiaries under the lost policy.  (*Id.* at 12.)

The insurance contract at issue in this action is absent.  Absent a contract, the Burgesses are permitted to introduce secondary evidence as to the contents of the policy.  *Dart Indus., Inc. v. Commercial Union Ins. Co.*, 28 Cal. 4th 1059, 1071 (2002); *see also Rogers v. Prudential Ins. Co.*, 218 Cal. App. 3d 1132, 1137 (Ct. App. 1990) (holding that contents of a lost or destroyed policy may be shown by oral evidence or by an unsigned copy); *Clendenin v. Benson*, 117 Cal. App. 674, 678 (Ct. App. 1931) (finding that the contents of a missing policy were sufficiently shown by the testimony of employees of the insurer and other records).  Further, an agent's performance of an act "of the particular contract or transaction in which he is then engaged, is, in legal effect, said by his principal and admissible as evidence."  *Dart Indus.*, 28 Cal. 4th at 1077.

Thus, determination of how the policy proceeds vested depends on a determination of facts that require a more developed record and cannot be decided at this stage.  Indeed, courts have refused to grant motions to dismiss where the plaintiff's basis for relief derives from a missing contract.  *E.g.*, *Banknorth, N.A. v. BJ's Wholesale Club, Inc.*, 394 F. Supp. 2d 283, 286 (D. Me. 2005); *Phillips v. Fed. Bureau of Prisons*, 271 F. Supp. 2d 97, 102 (D.D.C. 2003).  Accordingly, the Court is not persuaded to grant Protective's Motion to Dismiss under Rule 12(b)(1) and therefore **DENIES** the motion.

## C.     Statute of limitations

Protective next argues that the Court should dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) because the Burgesses' claims are time-barred by the applicable statute of limitations.  The limitations period for a breach-of-insurance-contract claim and for a violation of California Business & Professions Code Section 17200 is four years.  *See* Cal. Civ. Proc. Code § 377; Cal. Bus. & Prof. Code § 17208.  Thus, the statutory period for these claims would have run on January 8, 1991—four years after Billy's death.  The limitations period for breach of the implied covenant of good faith and fair dealing is three years.  Cal. Civ. Proc. § 338(b).  Consequently, the statute of limitations for a breach of implied covenant of good faith would have run on January 8, 1990.

The Burgesses argue the discovery rule postponed accrual of their claims until they received Protective's May 15, 2013 letter and discovered the underpayment of the insurance proceeds.  (Opp'n at 21.)  In the alternative, the Burgesses contend that at the earliest the claim could have accrued was Protective's April 30, 2012 underpayment of the claim.  (*Id.* at 20.)

Generally, a cause of action accrues at "the time when the cause of action is complete with all of its elements."  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005).  But an important exception to the general accrual rule is the "discovery rule," which tolls accrual "until the plaintiff discovers, or has reason to discover, the cause of action."  *April Enter., Inc. v. KTTV*, 147 Cal. 3d 805, 832 (1983).  The discovery rule is based on the notion that statutes of limitations "should not be interpreted as to bar a victim of wrongful conduct from asserting a cause of action before he could reasonably be expected to discover its existence."  *E-Fab, Inc. v. Accountants, Inc. Serv.*, 153 Cal. App. 4th 1308, 1318 (Ct. App. 2007).  To overcome an apparent limitations bar, the plaintiff claiming delayed discovery of the facts constituting the cause of action has the burden of setting forth pleaded facts to show (1) the time and manner of discovery and (2) the inability to have made earlier

1    discovery despite reasonable diligence. *Czajkowski v. Haskell & White, LLP*, 208 Cal.

2    4th 166, 177–78 (2012).

3           Here, the Burgesses have pleaded sufficient facts to demonstrate that the

4    Burgesses did not know about the insurance claim until Protective contacted them on

5    March 12, 2013.  Additionally, Protective never argues that the Burgesses could have

6    made an earlier discovery of the claim.  Thus, it does not appear that the Burgesses "

7    can prove no set of facts" supporting their claim for relief. *Morley*, 175 F.3d at 759.

8    **D.    State-law claims**

9           Finally, Protective argues that the Burgesses cannot satisfy the elements of their

10   state-law claims: breach of contract, breach of the covenant of good faith and fair

11   dealing, and violation of claims.   (Mot. 10–13.)   But rather than argue that the

12   Burgesses fail to properly allege these claims, Protective merely rehashes its standing

13   arguments, asserting that because North American was the sole beneficiary of the

14   policy, the Burgesses can claim no right to the policy proceeds.  (*Id.*)   Again, the

15   resolution of these claims depends on a determination of the beneficiaries of the

16   missing insurance contract.  Because the Burgesses sufficiently pleaded their state-law

17   claims and are permitted to introduce secondary evidence of the beneficiaries of the

18   missing insurance contract, it would be inapporpiate to grant dismissal.  Accordingly,

19   Protective's Motion to Dismiss under Rule 12(b)(6) is **DENIED**.

20                              **V.    CONCLUSION**

21          For the foregoing, the Court **DENIES** Protective's Motions to Dismiss the

22   Burgesses' Complaint under Rule 12(b)(1) and 12(b)(6).

23          **IT IS SO ORDERED.**

24   December 3, 2013

25

26   _____

27                  **OTIS D. WRIGHT, II**
              **UNITED STATES DISTRICT JUDGE**
28